# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CHESTER O'QUINN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:15-cv-00796-MJR** |
| | ) | |
| **JASON OLKOSKI,** | ) | |
| **THOMAS SPILLER,** | ) | |
| **S.A. GODINEZ,** | ) | |
| **CHARLES W. HECK,** | ) | |
| **MARCUS A. MYERS,** | ) | |
| **VIPIN SHAH,** | ) | |
| **C/O WANGLER,** | ) | |
| **C/O HELSLEY,** | ) | |
| **C/O HICKS,** | ) | |
| **C/O KRAFT,** | ) | |
| **C/O BRITTON,** | ) | |
| **C/O THEIS,** | ) | |
| **C/O WALTERS,** | ) | |
| **C/O BOWLES,** | ) | |
| **C/O FERNANDEZ,** | ) | |
| **C/O NEWBURY,** | ) | |
| **C/O BARNES,** | ) | |
| **C/O DICKERSON,** | ) | |
| **RANDY ALLEN, and** | ) | |
| **JOHN DOE #1,**[1] | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Chester O'Quinn is currently incarcerated at the Pinckneyville Correctional

Center in Pinckneyville, Illinois.  (Doc. 1 at 1.)  Proceeding *pro se*, O'Quinn has filed a civil

rights action against a number of prison officials at Pinckneyville, alleging violations of several

---

[1] In the list of defendants included in O'Quinn's complaint, O'Quinn indicates that he is pursuing claims against one unknown party, who he has dubbed John Doe #1.  Accordingly, the **CLERK** is **DIRECTED** to remove the Unknown Parties designation and add John Doe #1 instead.

constitutional amendments, the Americans with Disabilities Act, the Rehabilitation Act, the Health Insurance Portability and Accountability Act, and various provisions of Illinois law and the Illinois Constitution.  (*Id.*)  O'Quinn says that officials have refused to accommodate his hand- and back-related disabilities, have engaged in excessive force against him, have failed to provide him with medical care, have exposed him to improper conditions in his segregation and post-segregation living arrangements, and have written false tickets against him, among other claims.  (*Id.* at 7-16.)  O'Quinn seeks money damages and injunctive relief.  (*Id.* at 17.)

This matter is now before the Court for a preliminary review of O'Quinn's complaint pursuant to 28 U.S.C. § 1915A.  Under 28 U.S.C. § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity."  During this preliminary review under § 1915A, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

According to O'Quinn's complaint, on December 12, 2014 at around 5 A.M., Corrections Officer Hicks refused to allow O'Quinn to take his prescription insulin.  (Doc. 1 at 4.)  O'Quinn looked at Hicks' name tag so that he could record the officer's name and another guard, Lieutenant Olkoski, saw O'Quinn scrutinizing Hicks and began questioning O'Quinn.  (*Id.*)  Olkoski thought O'Quinn's actions constituted threats and intimidation of an officer, so he ordered O'Quinn to prepare to be placed in handcuffs.  (*Id.*)  O'Quinn extended his front arms so that he could be front-cuffed and told Olkoski that his medical permits required front cuffs due to O'Quinn's hand- and back-related disabilities.  (*Id.*)  Olkoski replied that O'Quinn's permits did

not require front cuffs, and he handcuffed O'Quinn behind his back.  (*Id.*)  O'Quinn then heard "something pop," and his legs gave out.  (*Id.*)  Another officer arrived and both Olkoski and the other officer dragged O'Quinn to segregation as he was crying out in pain.  (*Id.*)

Once O'Quinn arrived in segregation, O'Quinn says that Olkoski and the other officer slammed O'Quinn's head into a wall, knocking O'Quinn unconscious.  (*Id.*)  O'Quinn awoke to a number of officers and medical staff gathered around him, asking him what was wrong.  (*Id.*)  O'Quinn reported that he was having trouble breathing and that his head, back, neck, legs, arms, and wrists were in pain.  (*Id.*)  A nurse was called and twice checked O'Quinn's blood pressure, but otherwise no medical treatment was provided.  (*Id.*)  Officers then undressed O'Quinn, gave him a segregation jumpsuit, cuffed him behind his back, and dragged him to a cell without a mattress or heat.  (*Id.* at 5 & 9.)  The next morning, O'Quinn asked an officer named Davis if he could have a mattress and bedding, and if medical personnel could evaluate his injuries.  (*Id.* at 5.)  Davis got O'Quinn a mattress, but he was not given any bedding, and no nurse was sent to examine him.  (*Id.*)  O'Quinn also asked Walters and Colvin to turn the heat on in his cell, but that did not happen for some time.  (*Id.* at 5 & 9.)  That day, O'Quinn wrote a letter to Spiller, Edwards, and Allen, detailing his false placement in segregation, his lack of accommodations, and his need for treatment.  (*Id.* at 5 & 9.)  He received no response.  (*Id.* at 5 & 9.)

On December 13, 2014, around two days into his placement in segregation, an officer that O'Quinn has designated John Doe 1 arrived at his cell to bring O'Quinn his bedding.  (*Id.*)  The officer back-cuffed O'Quinn so that he could search O'Quinn's property before leaving the cell.  (*Id.*)  O'Quinn fell during the search and John Doe 1 called another officer to assist in getting O'Quinn off the floor; during that effort, O'Quinn says both officers slammed his head

into a steel bunk, causing him more pain.  (*Id.*)  John Doe 1 and the other officer then left O'Quinn's cell, without getting him any medical treatment for his injuries.  (*Id.*)

On December 15, 2014, health officials ordered O'Quinn brought to the infirmary for treatment.  (*Id.*)  Officer Wangler was assigned to transport him, and Wangler back-cuffed O'Quinn for the transfer – again ignoring O'Quinn's medical permits.  (*Id.*)  Wangler allegedly placed the cuffs on O'Quinn so tight that they cut off his circulation and "damaged his nerves." (*Id.*)  As Wangler walked O'Quinn to the prison's health care unit, he told O'Quinn that he did not appreciate O'Quinn's complaints about the other officers on Wangler's shift, and that he should stop.  (*Id.* at 6.)  Wangler then took O'Quinn to the infirmary for treatment.  (*Id.*)

On December 16, 2015, O'Quinn wrote another letter to Spiller and Edwards, advising them yet again of his false arrest and his lack of accommodations in segregation.  (*Id.*)  He received no response, so he followed up with another letter on December 18, again telling Spiller and Edwards that he was not receiving accommodations for his disabilities or treatment for his injuries.  (*Id.*)  He also told Spiller and Edwards that he was not receiving medical care for his injuries or being provided with his insulin and "snack pack" related to his diabetes.  (*Id.*)

On December 19, 2014, Wangler was present for an appointment that O'Quinn had with Dr. Shah in the prison's health care unit.  (*Id.*)  During the appointment, Wangler asked Shah what the x-rays of O'Quinn indicated, and Shah told him that the x-rays indicated a narrowing of O'Quinn's discs and severe arthritis, but no broken bones.  (*Id.*)  O'Quinn objected to this exchange while it was happening, saying that his medical records were private.  (*Id.*)  That same day, Officer Fernandez refused to bring O'Quinn food to take with his medications.  (*Id.* at 9.) For four days, Fernandez also refused to provide O'Quinn with his insulin.  (*Id.*)

On December 23, 2014, Officer Helsley back-cuffed O'Quinn, again in violation of O'Quinn's permits.  (*Id.*)  That same day, O'Quinn wrote a letter to Shah and Brown, the administrator of the health care unit, saying that he was not receiving accommodations for his disabilities, but neither Shah nor Brown responded.  (*Id.* at 6.)  The day after O'Quinn's letter, Officer Theis also refused to provide O'Quinn with his snack bag and his insulin.  (*Id.* at 9.) Several other officers back-cuffed O'Quinn during the remainder of his time in segregation from December 2014 to February 2015:  on December 30, 2015, Britton back-cuffed him; on January 2, 2015, Hicks back-cuffed him; on January 12, 2015, Bowles back-cuffed him; on January 21, 2015, Newbury back-cuffed him; and on January 28, 2015, Kraft back-cuffed him.  (*Id.* at 9.)

On December 27, 2014, O'Quinn wrote to several officials at the prison, including Lawless, Kellerman, McBride, Adams, Malcomb, Spiller, and Edwards, explaining that he still was being held falsely because he had not had a hearing before the adjustment committee.  (*Id.* at 6.)  O'Quinn encountered Myers, a member of the adjustment committee, shortly after sending his letter, and Myers told O'Quinn that the hearing occurred and that officers at the hearing said that O'Quinn declined to appear.  (*Id.* at 7.)  Myers said he would attempt to discover what went wrong, but nothing came of those efforts.  (*Id.*)  On December 29, 2014, O'Quinn sent an emergency grievance to Spiller, complaining that he was being held without process and asking for an investigation.  (*Id.*)  The day after the letter, O'Quinn received a summary from the adjustment committee saying that he had been found guilty of intimidation related to the December 12, 2014 exchange with Olkoski, and that he had been sentenced to two months in segregation.  (*Id.* at 8.)  On January 1, 2015, O'Quinn sent a letter to Godinez, detailing the arrest and his lack of accommodations for his disabilities in segregation.  (*Id.*)  On January 12, 2015, Godinez directed Spiller to conduct an investigation concerning O'Quinn's issues.  (*Id.*)

Twenty-four hours later, Spiller wrote to O'Quinn, saying that he could not substantiate any of O'Quinn's allegations concerning the alleged hearing errors or other issues.  (*Id.* at 9.)

O'Quinn was released from segregation on February 2, 2015, and moved to another area that he characterizes as equally problematic as segregation, despite the prison's assertion that he was indeed returned to general population.  (*Id.* at 10.)  In the new area, O'Quinn was denied access to the cafeteria area and was instead forced to eat in his cell; he was not allowed to go to the law library; he was not allowed to go to the chapel; he was not given a razor; he was not allowed to go to the gym; he was not allowed to go to the yard; he was not allowed to go to the day room; and he was not given railings, an attendant, or a shower chair.  (*Id.*)  Three days later, O'Quinn was transferred to the general population, but there he has a long walk to the cafeteria, law library, and health care unit, and he still has no shower chair or railings for support.  (*Id.*)

Since his return to the general population, O'Quinn says that he has been targeted by several friends of Olkoski who are trying to return him to segregation.  (*Id.* at 11.)  He claims that Barnes and Dickerson have written him false tickets due to his disabilities in February 2015 and have conspired with Olkoski to get him returned to segregation.  (*Id.*)  He also claims that Dickerson ordered Walters to conduct an improper search of O'Quinn on April 2, 2015, also by way of a conspiracy with Olkoski.  (*Id.*)  O'Quinn pursued an investigation with Furlow at the prison, but that investigation went nowhere.  (*Id.*)  O'Quinn finally alleges that Allen conducted illegal cavity searches on O'Quinn at some unspecified point, all at Spiller's direction.  (*Id.*)

Unsatisfied with prison officials' efforts to deal with O'Quinn's segregation-related problems, O'Quinn filed a civil rights action in this Court on July 22, 2015.  (*Id.* at 1.)  O'Quinn also filed a motion for a temporary restraining order with his complaint, along with a motion for an abeyance, seeking to place the entire case on an indefinite hold due to the demands of

O'Quinn's many other lawsuits.  (Doc. 5.)  On July 24, 2015, the Court denied the motion for a temporary restraining order and the motion for an abeyance and, given the character of the abeyance, asked O'Quinn to provide notice to the Court as to whether he wanted to continue with the case or voluntarily dismiss it.  (Doc. 7.)  On August 7, 2015, O'Quinn filed a notice with the Court indicating that he wished to proceed with his case, and filed another motion for a temporary restraining order or an injunction.  (Doc. 9 & 11.)  On August 11, 2015, the Court denied the motion for a restraining order and indicated that it would conduct a screening of the complaint in due course.  (Doc. 12.)  It is that task to which the Court will now turn.

## Discussion

O'Quinn's complaint is long, repetitive, and often hard to follow, making it difficult for the Court to parse his complaint into divisible claims for screening under § 1915A. Nevertheless, to facilitate the management of future proceedings, and in accordance with the objectives of Federal Rules of Civil Procedure 8 and 10, the Court will do its best to break the claims in O'Quinn's *pro se* complaint into numbered counts, as shown below.  Any claims not enumerated below should be considered dismissed without prejudice.  The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:** Hicks prevented O'Quinn from taking his prescription insulin, in violation of O'Quinn's Eighth Amendment rights.

**COUNT 2:** The Illinois Department of Corrections, through various employees, failed to accommodate O'Quinn's disc- and hand-related disabilities prior to his placement in segregation in December 2014, during his placement in segregation from December 2014 to February 2015, and after his placement in segregation from February 2015 to the present, in violation of the Americans with Disabilities Act and the Rehabilitation Act.

**COUNT 3:**    Olkoski, John Doe 1, Wangler, Helsley, Britton, Hicks, Bowles, Newbury, Kraft, and other unspecified officers back-cuffed O'Quinn during his time in segregation, in violation of O'Quinn's Eighth Amendment rights.

**COUNT 4:**    Godinez, Spiller, Edwards, Allen, Shah, and Brown were told via grievances or letters of officers' failure to abide by his front-cuff needs but did not intervene, in violation of O'Quinn's Eighth Amendment rights.

**COUNT 5:**    Olkoski and an unspecified officer dragged O'Quinn to segregation and threw him into a shower wall on December 12, 2014, in violation of the Eighth Amendment.

**COUNT 6:**    Unspecified parties failed to provide adequate treatment for O'Quinn's injuries following his encounter with Olkoski on December 12, 2014, in violation of the Eighth Amendment.

**COUNT 7:**    John Doe 1 and an unspecified officer slammed O'Quinn's head into the steel bunk in his segregation cell on December 13, 2014, in violation of the Eighth Amendment.

**COUNT 8:**    John Doe 1 and an unspecified officer did not obtain treatment for O'Quinn related to his December 13, 2014 injuries, in violation of the Eighth Amendment.

**COUNT 9:**    Wangler cuffed O'Quinn so tight that his circulation was cut off and dragged him by his handcuffs, in violation of the Eighth Amendment.

**COUNT 10:**    Wangler threatened and intimidated O'Quinn because O'Quinn reported that other shift officers harmed him, in violation of the First Amendment.

**COUNT 11:**    Shah disclosed to Wangler details about O'Quinn's x-rays on December 19, 2014, in violation of O'Quinn's constitutional rights and his rights under the Health Insurance Portability and Accountability Act.

**COUNT 12:**    Davis, Walters, Colvin, Spiller, Edwards, and Allen failed to provide O'Quinn with heat, bedding, and medical care for his injuries during his initial time in segregation, in violation of the Eighth Amendment.

**COUNT 13:**    Fernandez and Theis refused to bring O'Quinn a snack bag or insulin for his diabetic condition during some of O'Quinn's time in segregation, in violation of O'Quinn's Eighth Amendment rights.

**COUNT 14:**    Lawless, Kellerman, McBride, Adams, Malcomb, Spiller, and Edwards failed to provide O'Quinn with adequate due process prior to his placement in segregation, in violation of the Fourteenth Amendment.

**COUNT 15:** Unspecified defendants violated O'Quinn's rights under Illinois state laws, Illinois administrative directives, and the Illinois Constitution concerning his placement in segregation and his conditions in segregation.

**COUNT 16:** Unspecified defendants denied O'Quinn access to the general population cafeteria, access to the law library, access to the chapel, access to a razor, access to the gym, access to the yard, and access to a day room during his brief tenure in a transition cell in February 2015.

**COUNT 17:** Barnes, Dickerson, Olkoski and the Department of Corrections have violated O'Quinn's Rehabilitation Act and equal protection rights when Barnes and Dickerson wrote tickets against O'Quinn due to his disabilities, and Olkoski conspired with Barnes and Dickerson to have those tickets written and to return Olkoski to segregation.

**COUNT 18:** Walters sexually assaulted O'Quinn on the orders of Dickerson and undertook this behavior as a part of a conspiracy to harm O'Quinn with Olkoski, in violation of O'Quinn's rights.

**COUNT 19:** Furlow conducted a shoddy investigation into O'Quinn's illegal search incident, in violation of O'Quinn's rights.

**COUNT 20:** Under orders from Spiller, Allen conducted body cavity searches on O'Quinn at three unspecified points, in violation of O'Quinn's Eighth Amendment and Fourteenth Amendment rights.

**COUNT 21:** Walters harassed, threatened, and intimidated O'Quinn and called O'Quinn a "boy," in violation of O'Quinn's rights.

**COUNT 22:** All of the defendants retaliated against O'Quinn, violated his equal protection rights, and engaged in a conspiracy against O'Quinn.

O'Quinn first alleges that Hicks prevented him from taking his insulin on December 14, 2014 (**Count 1**). To state a medical claim under the Eighth Amendment, a plaintiff must satisfy a two-part test: he must first show that his condition "was objectively serious," and must then demonstrate that named defendants acted with deliberate indifference towards that condition. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). O'Quinn's diabetic condition qualifies as serious, at least for purposes of screening. *Egebergh v. Nicholson*, 272 F.3d 925, 928 (7th Cir.

2001).  In addition, the failure to provide a prisoner with prescription medication can, depending on the circumstances, constitute deliberate indifference.  *See, e.g.*, *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (allegation that nurse failed to give prisoner "his prescribed pain medication" could establish a constitutional claim); *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999) (prison guard's "deliberate refusal" to provide pain medicine prescribed by prison physician put forth an Eighth Amendment claim). As such, **Count 1** may proceed as to Hicks.

O'Quinn next alleges that various officials failed to accommodate his hand- and disc-related disabilities from December 14, 2014 to the present (**Count 2**).  Construing his complaint broadly, O'Quinn raises claims under both the Americans with Disabilities Act and the Rehabilitation Act.  *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012).  O'Quinn's claim under the Americans with Disabilities Act is coextensive with his claim under the Rehabilitation Act, so the Americans with Disabilities Act claim will be dismissed.  *See Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012) (dismissal of ADA claim proper given thorny questions of sovereign immunity that come with those claims).  To state a claim under the Rehabilitation Act, a plaintiff must allege that he is a qualified individual with a disability and that he was excluded from participating or denied the benefit of a service by reason of his disability.  *Id.* at 672.  The Rehabilitation Act requires prisons to provide reasonable accommodations for disabilities, so a refusal to make a necessary accommodation to allow access to a service can be tantamount to denying access to that service.  *See id.*

O'Quinn's complaint is difficult to follow concerning his Rehabilitation Act claim:  he repeatedly states that officials refused to accommodate his hand- and back-related disabilities, but he does not clearly allege how that conduct deprived him of services.  Owing to the Court's duty to interpret his complaint liberally, the Court can discern two possible claims linked to

prison services.  First, O'Quinn says that several guards handcuffed him behind his back despite knowing that he had a permit requiring front cuffs prior to and during his tenure in segregation. Construing his complaint liberally, those allegations could suggest conduct that deprived O'Quinn of access to services at the prison, so he has put forth an arguable Rehabilitation Act claim.  *E.g.*, *Kiman v. New Hampshire Dep't of Corrections*, 451 F.3d 274, 288-89 (1st Cir. 2006); *Bane v. Virginia Dep't of Corrections*, 267 F. Supp. 2d 514, 520 (W.D. Va. 2003).  In addition, O'Quinn suggests that officials have placed him in cells from February 15, 2015 onward that, due to his disabilities, preclude him from accessing showers, the cafeteria, the library, and health services on the same basis as other inmates, and those allegations are also sufficient to state an arguable claim.  *Jaros*, 684 F.3d at 672-73.  So **Count 2** will be allowed to proceed, but only against the Illinois Department of Corrections.[2]  Because the Rehabilitation Act does not allow for individual capacity claims, the officials named in O'Quinn's complaint will be dismissed from this count.  *Hiler v. Brown*, 177 F.3d 542, 545-46 (6th Cir. 1999).

O'Quinn also alleges that a number of prison officials were deliberately indifferent to his needs related to his front-cuff permit (**Count 3**):  he says that Olkoski back-cuffed him on December 12, 2014; that John Doe 1 back-cuffed him on December 13, 2014; that Wangler back-cuffed him on December 15, 2014; that Helsley back-cuffed him on December 23, 2014; that Britton back-cuffed him on December 30, 2014; that Hicks back-cuffed him on January 2, 2015; that Bowles back-cuffed him on January 12, 2015; that Newbury back-cuffed him on January 21, 2015; that Kraft back-cuffed him on January 28, 2015; and that unspecified officers back-cuffed him at other points in segregation.  The failure to abide by a medical permit related

---

[2] O'Quinn has sued all of the prison officials employed at Pinckneyville or the Department of Corrections in their official capacity, and that is enough to bring a Rehabilitation Act claim against the Illinois Department of Corrections.  *Jaros*, 684 F.3d at 670 n.2.  Accordingly, the **CLERK** is **DIRECTED** to add the Illinois Department of Corrections as a defendant.

to a disability could constitute interference with "treatment once prescribed," *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), and that is enough to state an arguable Eighth Amendment claim. Accordingly, **Count 3** may proceed as to Olkoski, John Doe 1, Wangler, Helsley, Britton, Hicks, Bowles, Newbury, and Kraft.  However, **Count 3** must be dismissed as it relates to O'Quinn's vague references to other unspecified officers – O'Quinn has not named any other Does in his caption or his complaint, so the unspecified officers are not parties to this case.  *See* FED. R. CIV. P. 10(a) (title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir.2005) (defendant must be "specif[ied] in the caption").

O'Quinn also alleges that he wrote to Godinez, Spiller, Edwards, Allen, Shah, and Brown concerning his front-cuff problems but they did nothing (**Count 4**).  This could suggest deliberate indifference on their part.  *See Perez v. Fenoglio*, — F.3d —, 2015 WL 4092294, at *8 (7th Cir. 2015).  Accordingly, **Count 4** may proceed as to Godinez, Spiller, Allen, and Shah, but must be dismissed as to Edwards and Brown, as they were not named as defendants in this case.

O'Quinn next claims that Olkoski and an unspecified officer engaged in excessive force when they dragged O'Quinn to the segregation unit on December 12, 2014 and then threw him against a shower wall in the segregation area (**Count 5**).  To put forth an excessive force claim, a prisoner must show that an assault occurred and that it was "carried out maliciously and sadistically, rather than as part of a good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010).  Critically, not "every malevolent touch by a prison guard gives rise to a federal cause of action" – an inmate who complains of a "'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  Here, O'Quinn has alleged that Olkoski and the unspecified officer pushed him so hard as to knock him unconscious, and that is

enough to state an arguable claim.  As such, **Count 5** may proceed as to Olkoski.  However, **Count 5** must be dismissed without prejudice as to the other unspecified officer, as O'Quinn has not designated this party as a Doe defendant and has not named him as a Doe in the caption.

O'Quinn also alleges that unspecified parties who saw him after the incident with Olkoski failed to provide him with adequate medical care (**Count 6**).  This claim must be dismissed for the simple reason that the unspecified parties were not named in the narrative or in the caption, and were not included in O'Quinn's list of defendants.  Accordingly, these parties are not defendants in this case at this time, and **Count 6** must be dismissed without prejudice.

O'Quinn next alleges that John Doe 1 and an unspecified officer slammed O'Quinn's head on the bunk in his segregation cell on December 13, 2014 (**Count 7**).  The Court cannot say at this stage whether the force employed by John Doe 1 and the other officer was *de minimis*, so **Count 7** may proceed as to John Doe 1.  *See Wilkins*, 559 U.S. at 37-38.  However, **Count 7** must be dismissed without prejudice as to the other unspecified officer, as he was not named as a Doe designate in O'Quinn's complaint and not put forth in O'Quinn's list of defendants.

O'Quinn also alleges that John Doe 1 and the other unspecified officer failed to obtain medical care for the injuries O'Quinn sustained during the incident in the cell (**Count 8**). O'Quinn's allegations of head trauma and severe pain are sufficient to allege an objectively serious medical condition, at least for purposes of screening.  *See Cooper v. Casey*, 97 F.3d 914, 916-17 (7th Cir. 1996) (cellmates' cuts, severe muscular pain, and eye and skin irritation from beating could qualify as a serious medical condition).  In addition, the circumstances of the failure to treat could suggest deliberate indifference on the part of John Doe 1 and the unspecified officer.  *See id.* at 917 ("Beating a person in violation of the Constitution should impose on the assailant a duty of prompt attention to any medical need to which the beating

might give rise . . . .").  As such, **Count 8** may proceed as to John Doe 1, but must be dismissed as to the unspecified officer, as he is not listed by Doe designation or otherwise in the caption.

O'Quinn next alleges that Wangler placed him in handcuffs so tight that they cut off his circulation, and also drug him by his handcuffs (**Count 9**).  As was the case with the claim against John Doe 1, the Court cannot say at this stage whether the force employed was *de minimis*, so **Count 9** may proceed as to Wangler.  *See Wilkins*, 559 U.S. at 37-38.

O'Quinn also claims that Wangler threatened and intimidated O'Quinn because O'Quinn reported that other shift officers had harmed him concerning his front-cuff requirements (**Count 10**).  To put forth a retaliation claim, a prisoner must "plausibly allege" that he "engaged in activity protected by the First Amendment," that he "suffered an adverse action that would likely deter future First Amendment activity," and that the "First Amendment activity was at least a motivating factor in the defendants' decision to retaliate." *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012).  Here, construing O'Quinn's complaint liberally, O'Quinn alleges that Wangler made threats against him, that he engaged in this conduct because O'Quinn made complaints about other guards, and that this conduct harmed him.  That is sufficient to put forth an arguable claim for screening purposes, so **Count 10** may proceed as to Wangler.

O'Quinn next claims that Shah violated his rights by disclosing the results of his x-rays to Wangler – the x-rays were done to evaluate O'Quinn's alleged injuries concerning attacks by officers, and O'Quinn says his constitutional rights and his rights under the Health Information Portability and Accountability Act were violated (**Count 11**).  This claim must be dismissed at the gate.  For one, there is no private right of action under the Health Insurance Portability and Accountability, so O'Quinn's claim under that statute is meritless. *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011).  In addition, the Seventh Circuit has not explicitly recognized

the viability of any constitutional medical privacy claim for prisoners. *Franklin v. McCaughtry*, 110 F. App'x 715, 718-19 (7th Cir. 2004); *Anderson v. Romero*, 72 F.3d 518, 523-24 (7th Cir. 1995). Those circuits that have recognized such a cause of action restrict it to disclosures of sensitive information by guards to other prisoners, not disclosures of non-sensitive information to other officials within a prison. *See Franklin*, 110 F. App'x at 719 (noting other circuit authority on this point and indicating that viable claims were restricted to dissemination of "intensely private medical information," such as HIV status or transsexualism); *Moore v. Prevo*, 379 F. App'x 425, 427 (6th Cir. 2010) (limiting right of privacy to disclosures of highly private and sensitive information to "other inmates," rather than other corrections officers). Here, O'Quinn does not allege a disclosure of a sensitive piece of medical information (such as HIV status), nor does he allege that the information at issue was disclosed to prisoners. Accordingly, he has not stated a constitutional claim, and **Count 11** must be dismissed without prejudice.

O'Quinn goes on to claim that he was exposed to inappropriate conditions of confinement during his initial tenure in segregation (**Count 12**). To state a conditions claim, a prisoner must allege facts showing that his conditions were sufficiently serious, and must then allege that the named defendants were "deliberately indifferent to the adverse conditions." *Rice ex rel. Rice v. Correctional Med. Servs.*, 675 F.3d 650, 664-65 (7th Cir. 2012). As it concerns the first step of this inquiry, conditions are sufficiently serious where a prisoner is denied "the minimal civilized measure of life's necessities." *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). Even if certain conditions are not individually serious enough to work constitutional violations, the Seventh Circuit has observed that "conditions of confinement may violate the Constitution in combination when they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Id.* at 842-43 (*quoting Wilson v. Seiter*, 501

U.S. 294, 304 (1991)).  Applying this standard to O'Quinn's complaint, O'Quinn's cumulative allegations regarding a lack of heat, medical care, and bedding during his initial placement in segregation are sufficient to allege serious conditions for purposes of screening.

As it concerns the second step of this inquiry, the complaint must suggest that a particular official had a sufficiently culpable state of mind.  *Wilson*, 501 U.S. at 298.  In other words, a plaintiff bringing a § 1983 claim must allege that each defendant was "personally involved in the deprivation" of his rights.  *Whitford v. Boglino*, 63 F.3d 527, 530-31 (7th Cir. 1995).  Personal involvement can be alleged by claiming that the defendant knew "about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see."  *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).  O'Quinn says that Walters was aware of the lack of heat in his cell but did nothing, and that is enough to state an arguable claim against him.  *See White v. Monohan*, 326 F. App'x 385, 388 (7th Cir. 2009) (allegation that defendants "were aware of the conditions of [the prisoner's] cell and did 'nothing' to address the conditions except make them worse" was sufficient).  O'Quinn also alleges that he wrote letters to Spiller and Allen advising of the lack of heat, lack of medical care, and lack of bedding, but they did not assist, and that too is enough to state an arguable claim.  *Perez*, 2015 WL 4092204, at *8-9.  As such, **Count 12** may proceed as to Walters, Spiller, and Allen.  That said, **Count 12** must be dismissed without prejudice as to Davis, Colvin, Edwards, and any other unspecified officers, as none of those parties were put forth by name or Doe designation in the caption.

O'Quinn next claims that Fernandez and Theis refused to bring O'Quinn a snack bag or insulin for his diabetic condition during the early part of his stay in the segregation unit, evincing deliberate indifference to his medical needs in violation of the Eighth Amendment (**Count 13**). As before, O'Quinn's diabetes arguably qualifies as a serious condition for purposes of

screening, and the failure to provide him with needed treatment and medications could establish deliberate indifference.  Accordingly, **Count 13** may proceed as to Fernandez and Theis.

O'Quinn goes on to claim that Lawless, Kellerman, McBride, Adams, Malcomb, Spiller, and Edwards failed to provide him with due process before placing him in segregation (**Count 14**).  Whether any process is due for a sanction of segregation turns on the severity of the confinement: "if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh," then some process is needed.  *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009).  When the period of confinement is lengthy, courts should examine the conditions in segregation and compare those to the conditions outside of segregation to determine whether process is necessary.  *See id.* (collecting cases and noting that a year of segregation requires examination of the "factual record").  However, when the period of confinement is short, the Seventh Circuit has "affirmed dismissal without requiring a factual inquiry into the conditions of confinement."  *Id.* (citing cases where prisoner was placed in segregation for fifty-nine days, sixty days, and seventy days, respectively, and no factual inquiry into the severity of segregation conditions was necessary); *see also Younger v. Hulick*, 482 F. App'x 157, 159 (7th Cir. 2012) (citing 70 days as an example of a length of time in segregation that does "not require inquiry into conditions").  Here, O'Quinn was placed in segregation for sixty-five days, and that kind of short period of confinement is insufficient to trigger any due process requirements.  So **Count 14** must be dismissed without prejudice.

O'Quinn has also raised a number of state claims concerning his treatment in segregation, and he asks the Court to take supplemental jurisdiction over those claims (**Count 15**).  To the extent he is attempting to raise claims that his treatment in segregation constituted cruel and unusual punishment under Article I, Section 11 of the Illinois Constitution, those claims must be

dismissed as duplicative of the claims that have already proceeded through screening – Section 11 of the Illinois Constitution is "coextensive with the cruel-and-unusual punishment clause of the Eighth Amendment," *People v. Reyes*, – N.E. 3d –, 2015 IL App. 2d 120471, at *2 (Ill. App. Ct. May 6, 2015), and a plaintiff may have only one recovery.  The remainder of O'Quinn's state law claims must be dismissed at the gate, as none of the statutes and disciplinary provisions he cites create private causes of action.  *See*, *e.g*., *Jackson v. Randle*, 957 N.E.2d 572, 575 (Ill. App. Ct. 2011) (rejecting any private cause of action for claims brought by a prisoner concerning conditions of confinement under the Illinois Unified Code of Corrections); *Ashley v. Snyder*, 739 N.E.2d 897, 902-03 (Ill. App. Ct. 2000) ("Prison regulations, such as those contained in the inmate orientation manual relied on here, were *never* intended to confer rights on inmates or serve as a basis for constitutional claims.  Instead, Illinois DOC regulations, as well as the Unified Code, were designed to provide guidance to prison officials in the administration of prisons.").  As such, the claims contained in **Count 15** are dismissed without prejudice.

O'Quinn next alleges that unspecified defendants violated his constitutional rights concerning his brief placement in a housing area in February 2015, as O'Quinn was not given access to the cafeteria on the same basis as other prisoners, was not given access to the chapel, was not allowed into the law library, and was precluded from accessing other areas (**Count 16**). This count must be dismissed for the simple reason that O'Quinn has not associated this conduct with any particular defendant.  It is critical to remember that § 1983 creates a cause of action based on personal liability and predicated on fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005).  Because O'Quinn has not said anything about how the named parties participated in this conduct, **Count 16** must be dismissed without prejudice.

O'Quinn also claims that, following his release from segregation, Barnes and Dickerson have written him false tickets due to his disabilities (**Count 17**). To the extent O'Quinn alleges that this conduct constitutes disability discrimination in violation of the Rehabilitation Act, **Count 17** will be allowed to proceed against the Illinois Department of Corrections, but not against Barnes and Dickerson individually. To the extent O'Quinn alleges that this conduct violates his equal protection rights, he has stated an arguable claim against Barnes and Dickerson. O'Quinn also alleges that Barnes and Dickerson conspired with Olkoski to undertake this activity and have engaged in a conspiracy with Olkoski to return him to segregation. While it is a close case, the Court is of the opinion that these allegations are sufficient to yoke Olkoski into this claim at screening. So **Count 17** may proceed as to Barnes, Dickerson, and Olkoski.

O'Quinn next alleges that Walters, at the direction of Dickerson, engaged in an inappropriate search of him following the false ticket incidents (**Count 18**). "An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires," can violate the Eighth Amendment, as can excessive force during a search. *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). Here, O'Quinn alleges that Walters grabbed his genitals, felt his bottom, and kicked him during a search, all while Dickerson laughed, and that is sufficient to put forth an arguable Eighth Amendment claim. O'Quinn further alleges that Dickerson and Walters engaged in this behavior to return O'Quinn to segregation and conspired with Olkoski towards that end. As before, the allegations of conspiracy are brief, but construing O'Quinn's complaint broadly, they are sufficient to rope

Olkoski into this claim for purposes of screening review.  Accordingly, **Count 18** may proceed through preliminary screening as to Dickerson, Walters, and Olkoski.[3]

O'Quinn also claims that Furlow failed to conduct an adequate investigation concerning his treatment by Dickerson, Walters, and others (**Count 19**).  This claim must be dismissed without prejudice because Furlow was not named as a defendant.  *Myles*, 416 F.3d at 551-52

O'Quinn next alleges that Spiller directed Allen to conduct several improper cavity searches on O'Quinn during his nine day tenure in the health care unit, in violation of O'Quinn's rights (**Count 20**).  To put forth an illegal strip or cavity search claim, a prisoner must allege facts tending to show that a search lacked a "valid penological reason" or that the search was "conducted in a harassing manner intended to humiliate and cause psychological pain."  *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009).  Here, O'Quinn alleges that there was no purpose behind the searches and that one of them occurred in the presence of a female nurse for no reason whatsoever, and that is sufficient to state an arguable Eighth Amendment claim.  Furthermore, O'Quinn alleges that these types of cavity searches were directed at him and no one else and that there was no reason for the searches, and that is sufficient to state an arguable class-of-one equal protection claim.  *See Swanson v. Chetek*, 719 F.3d 780, 783 (7th Cir. 2013) (equal protection clause "prohibits the singling out of a person for different treatment for no rational reason").  As such, **Count 20** may proceed as to Allen and Spiller.  However, **Count 20** must be dismissed without prejudice as to the other defendants, as O'Quinn's allegations of a conspiracy related to

---

[3] O'Quinn also alleges that Walters had a history of writing other prisoners up in part due to their race.  However, O'Quinn does not allege that Walters was motivated by racial animus for this claim, so any equal protection claim against Walters must be dismissed without prejudice.  *See Herro v. City of Milwaukee*, 44 F.3d 550, 552 (7th Cir. 1995) (a person asserting an equal protection violation must allege "intentional discrimination against him").

the search are conclusory, providing no details on what other defendants were involved or how they were involved in this claim. *Walton v. Walker*, 364 F. App'x 256, 258 (7th Cir. 2010).

O'Quinn goes on to allege that Walters recently harassed him, called him a "boy" in a derogatory fashion, and made unspecified threats against him (**Count 21**). O'Quinn should know that "simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). O'Quinn does not offer any details about the threats made against him, and the specifics he does offer on this claim suggest nothing more than verbal harassment alone. Accordingly, **Count 21** must be dismissed without prejudice.

As his final count, O'Quinn alleges that unspecified defendants retaliated against him, engaged in equal protection violations, and conspired to deprive him of his civil rights in violation of 42 U.S.C. § 1985(3) (**Count 22**). These catch-all allegations are too conclusory to state a claim. To put forth a viable claim under the federal rules, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The main purpose of this plausibility requirement is notice to defendants: a complaint passes muster if it includes enough information to provide a defendant with "fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but fails if the "factual detail in a complaint" is "so sketchy" that a defendant cannot discern what he did or how it was objectionable, *Brooks v. Ross*, 578 F.3d 574, 581–82 (7th Cir. 2009). To give a defendant notice, the complaint must lay out what each defendant did or did not do to violate the constitution; lumping all of the defendants together and making broad allegations against all of them will not do, "even for allegations of conspiracy." *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Here, O'Quinn has brought discrete

allegations concerning some of the defendants related to retaliation, equal protection violations, and conspiracies, and those counts will proceed through screening as laid out above.  However, his effort to pull every defendant into those counts via summary allegations at the end of his complaint must be rejected, as these conclusory allegations do not provide the defendants with notice of how they retaliated against O'Quinn, how they conspired against him, or how they violated his equal protection rights.  So **Count 22** must be dismissed without prejudice.

One note is in order concerning O'Quinn's claim against the Doe officer:  this party must be identified with particularity before service of the complaint can occur on him.  Where a prisoner's complaint states specific allegations describing the conduct of unknown staff sufficient to raise a constitutional claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, guidelines for discovery aimed at identifying Doe will be set by the magistrate judge.  Once Doe is identified, O'Quinn shall file a motion to substitute the named individual with the Doe designate.

One closing note is also in order concerning O'Quinn's request for preliminary injunctive relief.  (Doc. 11.)  On August 7, 2015, O'Quinn filed a motion for a preliminary injunction and a motion for a temporary restraining order, asking the Court for an order to transfer him to another facility or to keep the defendants named in this case one-hundred feet away from him at all times.  On August 11, 2015, the Court denied the request for a temporary restraining order because O'Quinn did not include specific facts demonstrating a need for such an order and his previous abeyance request militated against the need for such an order.  To the extent O'Quinn has asked for preliminary injunctive relief, the motion will be referred to United States

Magistrate Judge Stephen C. Williams, who shall resolve the request for relief and issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

### Disposition

IT IS HEREBY ORDERED that, for the reasons stated, **COUNT 1** shall **PROCEED** against **HICKS**.

IT IS FURTHER ORDERED that the Americans with Disabilities Act claim in **COUNT 2** is **DISMISSED without prejudice**.  The Rehabilitation Act claim will **PROCEED** against the **ILLINOIS DEPARTMENT OF CORRECTIONS**.  The **CLERK** is **DIRECTED** to add the **ILLINOIS DEPARTMENT OF CORRECTIONS** as a defendant to this case.

IT IS FURTHER ORDERED that **COUNT 3** shall **PROCEED** against **OLKOSKI**, **JOHN DOE #1**, **WANGLER**, **HELSLEY**, **BRITTON**, **HICKS**, **BOWLES**, **NEWBURY**, and **KRAFT**.  **COUNT 3** is **DISMISSED without prejudice** as to all other defendants.

IT IS FURTHER ORDERED that **COUNT 4** shall **PROCEED** against **GODINEZ**, **SPILLER**, **ALLEN**, and **SHAH**.  **COUNT 4** is **DISMISSED without prejudice** as to all other defendants.

IT IS FURTHER ORDERED that **COUNT 5** shall **PROCEED** against **OLKOSKI**. **COUNT 5** is **DISMISSED without prejudice** as to all other defendants.

IT IS FURTHER ORDERED that **COUNT 6** is **DISMISSED without prejudice**.

IT IS FURTHER ORDERED that **COUNT 7** shall **PROCEED** against **JOHN DOE #1**.  **COUNT 7** is **DISMISSED without prejudice** as to all other defendants.

IT IS FURTHER ORDERED that **COUNT 8** shall **PROCEED** against **JOHN DOE #1**.  **COUNT 8** is **DISMISSED without prejudice** as to all other defendants.

IT IS FURTHER ORDERED that **COUNT 9** shall **PROCEED** against **WANGLER**.

**IT IS FURTHER ORDERED** that **COUNT 10** shall **PROCEED** against **WANGLER**.

**IT IS FURTHER ORDERED** that **COUNT 11** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 12** shall **PROCEED** against **WALTERS**, **SPILLER**, and **ALLEN**.  **COUNT 12** is **DISMISSED without prejudice** as to all other defendants.

**IT IS FURTHER ORDERED** that **COUNT 13** shall **PROCEED** against **FERNANDEZ** and **THEIS**.

**IT IS FURTHER ORDERED** that **COUNT 14** is **DISMISSED without prejudice**. Because there are no further claims against them, **HECK** and **MYERS** are **DISMISSED** from this case.

**IT IS FURTHER ORDERED** that **COUNT 15** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 16** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that, to the extent **COUNT 17** raises a disability discrimination claim under the Rehabilitation Act, it shall proceed against the **ILLINOIS DEPARTMENT OF CORRECTIONS**.  To the extent **COUNT 17** raises an equal protection claim, it shall **PROCEED** against **BARNES**, **DICKERSON**, and **OLKOSKI**.

**IT IS FURTHER ORDERED** that **COUNT 18** shall **PROCEED** against **DICKERSON**, **WALTERS**, and **OLKOSKI**.

**IT IS FURTHER ORDERED** that **COUNT 19** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 20** shall **PROCEED** against **ALLEN** and **SPILLER**.  **COUNT 20** is **DISMISSED without prejudice** as to all other defendants.

**IT IS FURTHER ORDERED** that **COUNT 21** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 22** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **ILLINOIS DEPARTMENT OF CORRECTIONS**, **OLKOSKI**, **SPILLER**, **GODINEZ**, **SHAH**, **WANGLER**, **HELSLEY**, **HICKS**, **KRAFT**, **BRITTON**, **THEIS**, **WALTERS**, **BOWLES**, **FERNANDEZ**, **NEWBURY**, **BARNES**, **DICKERSON**, and **ALLEN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the John Doe defendant until such time as Plaintiff has identified him by name in a properly filed amended complaint.  It is Plaintiff's responsibility to provide the Court with the name and service address for this individual.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be

filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending Motion to Appoint Counsel (Doc. 4) is **REFERRED** to Magistrate Judge Stephen C. Williams for consideration.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's pending request for preliminary injunctive relief (Doc. 11) is hereby **REFERRED** to Magistrate Judge Stephen C. Williams, who shall resolve the request for injunctive relief and issue a report and recommendation.  The period for filing any objections to Judge Williams' report and recommendation shall not exceed **14 days** from the date of the report.  Any motions filed after the date of this Order that relate to the request for injunctive relief or seek leave to amend the complaint are also **REFERRED** to Judge Williams.

Further, this entire matter is **REFERRED** to Magistrate Judge Stephen C. Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in

the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 24, 2015**

<u>s/ MICHAEL J. REAGAN</u>
**Chief Judge Michael J. Reagan**
**United States District Judge**